STATE OF NEBRASKA, APPELLEE, v. EDGAR BOBBIE RICH, APPELLANT.

158 N. W. 2d 533

Filed April 26, 1968. No. 36671.

A. Q. Wolf and Thomas D. Carey, for appellant.

Clarence A. H. Meyer, Attorney General, and James J. Duggan, for appellee.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

CARTER, J.

The defendant, Edgar Bobbie Rich, was convicted by a jury of the crime of breaking and entering with intent to rape. He was sentenced to 10 years' imprisonment, and he has appealed.

On the early morning of December 17, 1966, Mrs. Judith Holden was awakened from her sleep by a noise. In investigating the cause of her disturbance, she became suspicious that someone was in the house even though she had locked all outside doors. With a flower vase in her hand, she went into the living room and was then grabbed by a man who had been hiding behind a reclining chair. She struck the man on the head with the vase and caused a flow of blood. The man thereafter had blood on his head and face and she had it on her legs, hands, and robe. After much physical resistance she was forced down on a davenport and the man demanded sexual relations. She agreed thereto provided

she was permitted to quiet her 5-year-old son who had been awakened by the commotion. She went into the bedroom ostensibly for that purpose, but called the police from the bedroom instead. He called her out of the bedroom and away from the telephone. At this time she thought she saw a police car arriving and turned on the lights and opened the door. The man made his escape.

The next morning, police detectives interviewed Judith Holden. Carol Underwood, a next door neighbor, and some children were also there. The police produced some "mug shots" from which Judith and Carol identified the defendant. The second morning after the crime, Judith and Carol were taken to the police station where each identified defendant in a police lineup. They identified the defendant as the wanted man.

Carol Underwood testified that she lived next door to Judith Holden. She testified that on June 25, 1966, at about 10:30 p.m., she was awakened by a man sitting on her and holding a knife at her throat. After a difficult struggle, the man left without accomplishing his purpose. She reported the assault to the police, but she was unable to identify her assailant with certainty. She identified the defendant as her assailant in the present trial.

Defendant's evidence was that he had suffered a cut on his head while at work, which was verified by fellow employees. His wife testified that defendant was at home when she got home from work at 12:30 a.m., and that defendant did not leave the home during the rest of the night. A policeman testified that he went to defendant's home at 2 a.m., the morning of December 18, 1966, and that there was no one there. At 5:30 a.m., the same policeman went back to defendant's home and was told by defendant's wife that he was not there. The policeman found defendant hiding behind a bedroom door and made the arrest at that time. There is evidence in the record that defendant had a mustache on

December 17, 1966, which does not show on the "mug shots" offered in evidence. The defendant did not testify.

On this evidence, the jury returned a verdict of guilty. Defendant asserts that the evidence does not sustain the verdict. It was for the jury to resolve the conflicts in the evidence which it did adversely to the defendant. The evidence was sufficient. Buckley v. State, 131 Neb. 752, 269 N. W. 892; State v. Hizel, 179 Neb. 661, 139 N. W. 2d 832.

Defendant contends there is no proof of unlawful breaking and entering. The evidence was that the house was locked immediately before the assault. The door was open when the intruder's presence was discovered. The evidence of the assault is proof enough of the intent for which the entry into the house was made. The proof was adequate under the rule stated in Young v. State, 133 Neb. 644, 276 N. W. 387, wherein it is said: " 'The act of breaking may be shown by proof, either direct or circumstantial. * * * The breaking must be accompanied by an unlawful intent; if not, it is not burglary. This intent may also be proved by direct or circumstantial evidence. * * * These rules are fundamental and well understood, are included in the statute,' etc. It is for the jury to say, under proper instructions, whether or not the defendant was guilty as charged in the information beyond a reasonable doubt."

Defendant contends that the evidence of the previous crime testified to by Carol Underwood was too remote and not admissible. The general rule is that another crime, similar to that charged, is relevant and admissible if it tends to prove a particular criminal intent which is necessary to constitute the crime charged. Such previous crimes tend to show his inclination or disposition to commit such crimes and fix the pattern of previous conduct which in cases such as rape and intent to commit rape is relevant and material in establishing the intent with which an act was done. State v. Easter,

174 Neb. 412, 118 N. W. 2d 515; State v. Dodd, 175 Neb. 533, 122 N. W. 2d 518. Whether or not such other crimes are too remote rests largely in the discretion of the trial court. In Sall v. State, 157 Neb. 688, 61 N. W. 2d 256, this court said: "Evidence of a separate and distinct crime committed by the accused is admissible in a prosecution of a crime that has an element of motive, criminal intent, or guilty knowledge. Henry v. State, 136 Neb. 454, 286 N. W. 338; Turpit v. State, 154 Neb. 385, 48 N. W. 2d 83. An exception to the general rule important in considering the objection made in this case is stated in Foreman v. State, 126 Neb. 619, 253 N. W. 898: 'Evidence of other crimes, similar to that charged, is relevant and admissible when it tends to prove a particular criminal intent which is necessary to constitute the crime charged. Whether such other alleged crimes are too remote rests largely in the discretion of the trial court.' See, also, Turpit v. State, supra. Defendant has referred to many Nebraska decisions on this subject, but an examination of them has failed to disclose that a reversal in any one of them was had because of the remoteness of the prior similar offenses. Independent research has not led to a case in this jurisdiction where a reversal was made on the ground of remoteness. The extent to which the discretion of the trial court will be allowed to be exercised in this regard has not been fixed by any decision of this court. Probably it cannot be but depends upon the facts of each case. * * * The doctrine generally accepted is that remoteness in point of time may weaken the evidential value of the evidence but does not justify its exclusion. State v. France, supra (146 Kan. 651, 72 P. 2d 1001); State v. Ridgway, 108 Kan. 734, 197 P. 199." The evidence is not too remote. The defendant, however, is entitled to an instruction limiting the evidence of such former crimes to the sole purpose of determining the issue of intent. Such an instruction was given in this case.

We find no error in the record and the judgment is affirmed.

AFFIRMED.