615 P.2d 635

**STATE of Arizona, Appellee,**

v.

**Monte Lee BURR, Appellant.**

No. 4889.

Supreme Court of Arizona,
In Banc.

June 16, 1980.

Rehearing Denied Sept. 4, 1980.

Robert K. Corbin, Atty. Gen., Phoenix, by William J. Schafer III, Gregory A. McCarthy, Asst. Attys. Gen., Phoenix, for appellee.

Alston, Edwards & Novak, by Gene R. Stratford, Phoenix, for appellant.

STRUCKMEYER, Chief Justice.

Appellant, Monte Lee Burr, was convicted of five counts of securities fraud, in violation of A.R.S. § 44–1991, and appeals. Jurisdiction was obtained pursuant to Rule 47(e)(5), Rules of the Supreme Court, 17A A.R.S.

Monte Lee Burr was employed as a land salesman from January until April of 1973 by Rotola Investment Company, a corporation (RIMCO). It sold land owned by Bank-

er's Finance and Holding Company, a corporation (Banker's). RIMCO produced promissory notes and mortgages by the sale of real estate, which commercial paper was transferred to Banker's, who sold it to investors.

The evidence establishes that defendant, while working for RIMCO, had certain purported buyers enter into sales contracts. These contracts recited that substantial down payments had been made, that installment payments would be made over a stated period of time, and that a specified rate of interest was included in the installment payments. In fact, the buyers were told by Burr that no down payment need be made. In exchange for executing the contracts, the buyers were given warranty deeds to the property. These contracts were then assigned to Banker's Finance and sold at discount to investors.[1]

Burr testified he never intended that the contracts were to be sold to investors; that he acted at Rotola's request in order to demonstrate sales activity so that financing could be obtain from Banker's. Burr also testified that he did not know anything about the ultimate disposition of the contracts because he simply gave then to Rotola in order to establish sales of land.[2]

Burr raises the following issues on appeal. First, that the trial court erred in denying his motion to dismiss the indictment or suppress statements made to Detective James Kidd because they were made after Kidd promised that Burr would not be prosecuted.

Second, that an assistant attorney general expressed an opinion to the grand jury that Burr had knowledge of the scheme to defraud investors.

Third, that the evidence was insufficient to support his conviction.

In the course of the investigation of possible violations of the law by RIMCO and Banker's, Detective James Kidd of the Phoenix Police Department determined that Burr was named as salesman on several contracts. Kidd attempted to contact Burr, who was working in Alaska. On November 5, 1975, Burr telephoned Kidd. During the ensuing telephone conversation, Burr described his activities on behalf of RIMCO in some detail.

Burr asserts that he believed statements made by Kidd were promises that he, Burr, would not be prosecuted for criminal activity involving RIMCO and Banker's if he agreed to testify truthfully in any subsequent proceedings. Burr's further position is that the actions of the assistant county attorney at the time Burr testified before the grand jury reinforced his belief that such an agreement had been made. Burr moved in the trial court to dismiss the indictment. However, after an evidentiary hearing the court found that no offer of an agreement had been made.

A defendant seeking to have an indictment dismissed on the ground that the prosecuting authorities agreed to immunity in exchange for cooperation or a plea of guilty has the burden of proving by a preponderance of the evidence the existence of such an agreement. *See Palermo v. Warden*, 545 F.2d 286 (2d Cir. 1976); *cf.* Rule 32.8(c) Arizona Rules of Criminal Procedure 17 A.R.S. (burden of proof on post-trial motions is preponderance). Appellate review of the trial court's findings of fact is limited to a determination of whether those findings are clearly erroneous. *Palermo v. Warden*, supra at 293; *United Bank v. Mesa N. O. Nelson Co.*, 121 Ariz. 438, 590 P.2d 1384 (1979).

"A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Palermo v. Warden*, supra at 293.

---

1. This scheme is described in more detail in *State v. Baumann*, 125 Ariz. 405, 610 P.2d 39 (1980).

2. Burr testified that he generated the paper, at the urging of Rotola, to establish a sales record for RIMCO. With an established sales record, RIMCO, according to Rotola, could then obtain financing to develop a new subdivision.

From our review of the record, we do not find that the trial court's ruling was "clearly erroneous."

■ Burr contends that if this Court finds that no agreement was made, then the telephone statement he made to Kidd should be suppressed as involuntary. In this, the State has the burden of showing by a preponderance of the evidence, *see State v. Knapp*, 114 Ariz. 531, 538, 562 P.2d 704, 711 (1977), that Burr's confession to Detective Kidd had not been obtained by any direct or implied promises. *State v. McFall*, 103 Ariz. 234, 439 P.2d 805 (1968).

We have held:

"A confession to be free and voluntary within the meaning of the Fifth Amendment to the Constitution of the United States must not have been obtained by 'any direct or implied promises, *however slight.*'" *Id.* at 236, 439 P.2d at 807.

The issue, in essence, is whether this statement by Detective Kidd constituted a promise to Burr that he would not be prosecuted if he gave Kidd information concerning the frauds which Kidd was investigating:

"Okay, Monte. That's, this phone call is costing you money and there is no point in running it up any further than it is, so let me explain a couple of things to you and then I'll, I would just like to know what you have to say about it. First of all, before we go any further, I've got to tell you, I'm not trying, I'm not going to arrest you or put you in jail or anything, but before I ask you anymore I've got to tell you what your rights are and your rights are that you don't have to tell me anything. You don't have to answer any of my questions."

Whether this statement contains an inducement to waive Fifth Amendment rights is a question of law and this Court need not defer to the trial court's conclusions if the facts are undisputed. *Zellerbach Paper Company v. Valley National Bank*, 13 Ariz. App. 431, 433, 477 P.2d 550, 552 (1970); *Park Central Development Co. v. Roberts Dry Goods, Inc.*, 11 Ariz.App. 58, 60, 461 P.2d 702, 704 (1969); *Owen v. Mecham*, 9 Ariz.App. 529, 531, 454 P.2d 577, 579 (1969).

■ Detective Kidd's statement—"I'm not trying, I'm not going to arrest you or put you in jail or anything * * * *"— carried with it the clear implication that Burr would not be arrested if he disclosed the details of what occurred in the land sales. The statement implied a benefit to Burr in exchange for information. This made Burr's statement legally involuntary. *See Brady v. United States*, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970); *Malloy v. Hogan*, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964); *State v. McFall*, 103 Ariz. 234, 439 P.2d 805 (1968). The telephone conversation should have been suppressed.

Burr argues that a statement made by an assistant attorney general to the grand jury led the jury to believe that the attorney general had concluded Burr was aware of the scheme to defraud.

■ It is true that it is improper for a prosecutor to express his personal opinion as to an accused's guilt before the grand jury. *State v. Bojorquez*, 111 Ariz. 549, 554, 535 P.2d 6, 11 (1975). We do not think the question of which Burr complains prejudiced the grand jury against him.[3] The question is at most an oblique reference to the prosecutor's belief of Burr's guilty knowledge. It is unlikely that it would have prejudiced the jury to the extent that an indictment was returned where it would not otherwise have been. We find no reversible error.

■ Burr finally urges that his conviction was not supported by substantial evi-

---

**3.** The assistant attorney general asked Detective Kidd this question:

"Do you have any information or did you have any information that the land buyers other than Mr. Rotola and Mr. Burr, knew that they, when they executed these agreements or papers in response to request by Rotola, did they know—do you have any information to indicate that they knew these things were ultimately going to be sold to investors somewhere else or did they in most cases sign these as favors to Rotola, Burr or Vaughn?"

dence. His argument is that there was not sufficient evidence to prove he had knowledge that the fraudulent contracts were being sold to investors. However, one witness testified Burr had been informed that the land sales contracts generated by RIM-CO were to be turned over to Banker's to be sold to investors. Plainly, if the jury believed the witness it could have inferred Burr had knowledge of the scheme to defraud. The credibility of witnesses is a question of fact for the trier of fact and will not normally be disturbed on appeal. *State v. Hunter*, 112 Ariz. 128, 129, 539 P.2d 885, 886 (1975).

For the reason that Burr's statement was involuntary, this cause is reversed and remanded for a new trial.

HOLOHAN, V. C. J., and HAYS, CAMERON and GORDON, JJ., concur.